# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

|  |  |
|---|---|
| ELIEZER CRUZ, | Civil Action No.: _____ |
| Plaintiff, |  |
| vs. |  |
| EQUIFAX INFORMATION SERVICES, LLC, | **COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT AND DEMAND FOR JURY TRIAL** |
| Defendant. |  |

Eliezer Cruz ("Plaintiff") brings this action on an individual basis under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), seeking statutory and other damages against defendant Equifax Information Services, LLC ("Equifax"), and alleges, based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

## PRELIMINARY STATEMENT

1. Equifax has failed to maintain accurate records concerning Plaintiff's credit history and has reported and continues to report credit accounts and hard inquiries on Plaintiff's consumer reports that are not associated with Plaintiff.

2. As a direct result of Equifax's FCRA violations, Plaintiff's credit score has been reduced and Plaintiff has suffered emotional distress.

3. Accordingly, Plaintiff is entitled to damages.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1681p.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims have occurred in this district.

## PARTIES

6. Plaintiff is a natural person who resides in Lee County, Florida and qualifies as a "consumer" as defined and protected by the FCRA.

7. Defendant Equifax is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Equifax is registered to do business in the State of Florida, maintains its principal place of business at 1550 Peachtree Street, NW, H46, Atlanta, Georgia 30309, regularly conducts business in this judicial district, and can be served with process by way of its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

## STATEMENT OF FACTS

8. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information contained in their consumer credit reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave

responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681a.

9. To that end, the FCRA imposes the following duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (commonly referred to as "credit reports"); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies.

10. In addition, consumer reporting agencies must immediately notify furnishers if a consumer disputes the accuracy of information reported by that furnisher. Section 1681s-2(b) requires a furnisher, upon receiving a consumer's dispute, to conduct a reasonable investigation, mark the account as disputed, and update the reporting if necessary.

11. Plaintiff has a legally protected interest in Equifax fulfilling its duties under the FCRA, so that Plaintiff's information is maintained and reported fairly, to support maximum levels of confidentiality, accuracy, and relevancy.

12. In or about May of 2020, Plaintiff applied for an extension of credit with non-party Ally Financial for purposes of securing an auto loan.

13. Upon information and belief, as part of the application process, Ally Financial attempted to access Plaintiff's credit file maintained by Equifax and reviewed Plaintiff's consumer report produced by Equifax.

14. After Plaintiff submitted his application for credit to Ally Financial, Plaintiff was advised by the Ally Financial representative that a mortgage account was being reported on his consumer report.

15. Plaintiff was surprised to learn about the reported mortgage account, as Plaintiff, who was 20 years old at the time, had never applied for a mortgage.

16. Immediately after applying for credit with Ally Financial, Plaintiff's brother, Elier Cruz, contacted Plaintiff and informed Plaintiff that his credit score (*i.e.*, that of Elier's) had mysteriously dropped without Elier having conducted any recent transactions that would cause his credit score to drop.

17. Plaintiff and Plaintiff's brother share similar, but noticeably different, names and were assigned social security numbers that share all but one digit when they immigrated from Cuba.

18. Because Plaintiff had never applied for a mortgage, and Plaintiff's brother had not conducted any recent transactions that would cause his credit score to drop, Plaintiff was concerned that he and his brother were both potential victims of identity theft and/or credit fraud.

19. Plaintiff was suspicious of the possibility that Equifax may have been mixing his credit history with that of his brother's, but Plaintiff felt that he had no way of confirming whether this was true or how to correct it.

20. Because Plaintiff had no way to confirm whether Equifax was mixing his credit history with that of his brother's or how to correct the issue if that were the case, Plaintiff was concerned of the possibility that both he and his brother were the victims of identity theft and/or credit fraud.

21. The matter remained unresolved for some time, during which time Plaintiff and Plaintiff's brother were left feeling very uncertain of the status and protection of their credit history.

22. In May of 2021, Plaintiff again applied for an extension of credit for purposes of obtaining an auto loan, this time with American Honda Finance Corporation ("Honda Financial").

23. As part of the application process, Honda Financial accessed Plaintiff's credit files maintained by both Equifax and TransUnion, as well as reviewed consumer reports produced by Equifax, and asked Plaintiff to verify a number of details concerning someone else's financial history, including details concerning a mortgage and a purchase loan for a pick-up truck.

24. Plaintiff had never applied for a mortgage or a purchase loan for a pick-up truck, but his brother Elier had.

25. Once again, immediately after applying for the loan with Honda Financial, Plaintiff's brother Elier contacted Plaintiff and informed him that his credit score (*i.e.*, that of Elier's) had mysteriously dropped without Elier having conducted any recent transactions that would cause his credit score to drop.

26. Plaintiff was *once again* left feeling very uncertain of the status and protection of both his and his brother's credit.

27. Sometime between June of 2021 and October of 2021, Plaintiff applied for two more extensions of credit: (i) Plaintiff applied for a second extension of credit through Honda Financial, and (ii) Plaintiff applied for a credit limit increase for his existing Best Buy credit card issued by Citibank, N.A. ("Citibank").

28. Upon information and belief, in connection with these applications, Honda Financial and Citibank attempted to access Plaintiff's credit file maintained by Equifax and reviewed Plaintiff's consumer reports produced by Equifax.

29. After each of these additional applications, Plaintiff's brother called Plaintiff and informed him his credit score (*i.e.*, that of Elier's) had dropped without Elier having conducted any recent transactions that would cause his credit score to drop.

30. Plaintiff was denied the second extension of credit from Honda Financial, and his request for a credit limit increase was never responded to.

31. On or about November 5, 2021, in order to determine the extent of Defendants' mixing of credit information in Plaintiff's file, Plaintiff requested consumer reports from Equifax by way of a written and mailed request.

32. Plaintiff explicitly included his full name, his social security number, his date of birth, and his current mailing address in the written request.

33. In response to his request for a consumer report, Equifax sent a consumer report to Plaintiff dated November 15, 2021.

34. The November 15, 2021 Equifax consumer report was addressed to Plaintiff at the address that Plaintiff included in his written request.

35. However, the November 15, 2021 Equifax consumer report reported that the "Name on File" for Plaintiff's file was *Elier Cruz*.

36. Elier Cruz is not Plaintiff's name, but that of his brother.

37. In addition, the November 15, 2021 Equifax consumer report reported an incorrect social security number, date of birth, current address and previous addresses as information contained in Plaintiff's Equifax file.

38. In fact, the November 15, 2021 Equifax consumer report reported Plaintiff's brother's social security number, date of birth, current address and previous addresses as information contained in Plaintiff's Equifax file.

39. Further, the November 15, 2021 Equifax consumer report reported a "LoanCare TIAA Bank" mortgage tradeline, a "Sync JC Penny" tradeline, a

"Suntrust" tradeline, a "Sync Brandsmart" tradeline, "Comenity Capital/Dental First" tradeline, and "American Express" tradeline, a "Syncb/Lowes" tradeline, a "TIAA Bank" tradeline, a "GM Financial" tradeline, two "Mohela/ Dept of Ed" tradelines, a "Nissan" tradeline, a "JPMCB Auto Finance" tradeline, two "Dept of Ed/Aspire" tradeline, a "PNC Bank" tradeline, a "Santander Consumer USA" tradeline, and two "US Dept of Ed AFSA" tradelines—all of which did not belong to Plaintiff.

40. In addition, the November 15, 2021 Equifax consumer report reported at least three hard inquiries that did not correspond to any applications of credit submitted by Plaintiff or any other transaction initiated by Plaintiff that would create such hard inquiries

41. In fact, these mixed tradelines and mixed hard inquiries (collectively, the "Mixed Equifax Information") were all related to Plaintiff's brother's credit transactions and accounts opened and owned by Plaintiff's brother.

42. Upon information and belief, each time a potential creditor attempted to access Plaintiff's credit file maintained by Equifax or reviewed consumer reports produced by Equifax concerning Plaintiff, as alleged herein, Equifax reported credit information concerning Plaintiff's brother Elier it had mixed into Plaintiff's credit file (including without limitation, the Mixed Equifax Information) to the potential creditor(s) as if such information were correctly associated with Plaintiff.

43. Plaintiff was denied extensions of credit by several of the potential creditors.

44. Upon information and belief, Plaintiff would have been more likely to have been approved for the extensions of credit had Equifax not mixed credit information concerning Plaintiff's brother into Plaintiff's credit file (including without limitation, the Mixed Equifax Information) and reported such mixed information to the creditor at issue as if such information were correctly associated with Plaintiff.

45. Further, as a result of Equifax's mixing of credit information concerning Plaintiff's brother into Plaintiff's credit file and reporting of such information as if it were associated with Plaintiff, Plaintiff suffered the continual emotional distress of not knowing whether he was the victim of credit fraud or identity theft.

46. Such emotional distress was exacerbated by the fact that Plaintiff felt that he was left without recourse, as he felt he had no way of clarifying whether he was indeed the victim of credit fraud or identity theft, let alone resolving the issue.

47. In addition, Plaintiff suffered considerable emotional distress when dealing with the issue, including the distress of being labeled a liar when asked to confirm credit information that was not actually his.

48. The circumstances created by Equifax's FCRA violations have affected Plaintiff's emotional state so severely that he has suffered from bad dreams concerning his feelings of helplessness and uselessness, and he has been kept awake at night wrestling with the issue and the emotional distress it has caused.

49. Finally, Plaintiff has been deterred from submitting additional applications for extensions of credit or entering into any transactions that may involve a third party running his credit, as he is concerned he would cause his brother's credit score to drop even further and/or be forced to confirm credit information that isn't his or else appear to be lying.

50. Plaintiff is interested in refinancing his car, but cannot bring himself to apply for the refinancing, as he is aware they will run his credit.

51. Equifax is well aware that familial relatives who immigrate to the United States at the same time receive social security numbers that are similar.

52. Upon information and belief, Equifax has no procedure in place to account for social security and name discrepancies for immigrants who routinely share similar social security numbers, addresses and last names.

53. Accordingly, Equifax's violations of the FCRA were willful. Accordingly, Plaintiff is entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

54. Alternatively, Equifax's violations of the FCRA were negligent. Accordingly, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681o.

55. In any event, Equifax is individually liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSES OF ACTION

### COUNT I

### Against Equifax for Violations of the FCRA, 15 U.S.C. § 1681e

56. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

57. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to assure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure **maximum possible accuracy** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

58. In violation of § 1681e(b), Equifax failed to follow reasonable procedures to ensure maximum possible accuracy of the information attributable to Plaintiff.

59. Specifically, Equifax recorded Plaintiff's brother's credit information into Plaintiff's credit file and subsequently reported such information in Plaintiff's consumer reports as if the information was associated with Plaintiff.

60. Equifax's misconduct was a direct and proximate cause of Plaintiff's injuries, as alleged herein, and Equifax is therefore liable to Plaintiff for its negligent and willful failures to follow reasonable policies and procedures. As a result of Equifax's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered statutory and actual damages as described herein and is entitled to recover actual damages and punitive damages, pursuant to 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a judgment:

i. Awarding Plaintiff statutory money damages, actual damages and punitive damages as allowed by 15 U.S.C. §§ 1681n and/or 1681o, including pre-judgment and post-judgment interest;

ii. Awarding attorney's fees and costs as required by 15 U.S.C. §§ 1681n and/or 1681o, and other relief; and

iii. Awarding such other relief as to this Court may seem just and proper.

## **TRIAL BY JURY**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

DATED: January 14, 2022

**THE CONSUMER JUSTICE LAW FIRM**

*/s/ Yosef Steinmetz*
Yosef Steinmetz, Bar No. 119968
8245 N. 85th Way
Scottsdale, AZ 85258
T: (305) 330-3750
ysteinmetz@cjl.law
*Attorney for Plaintiff Eliezer Cruz*